**UNITED STATES of America, Plaintiff,**

v.

**STATE OF OHIO, Defendant.**

**No. C–2–89–0834.**

United States District Court, S.D. Ohio, E.D.

Dec. 13, 1990.

James Portnoy and Surell Brady, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Bennett Manning, Ohio Asst. Atty. Gen., Columbus, Ohio, for defendant.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter comes before the Court to consider the cross-motions of the parties for summary judgment. Fed.R.Civ.P. 56. The United States instituted the instant action seeking reimbursement from the State of Ohio for the cost of medical care provided by the Department of Veterans Affairs ("VA") to David Bernath, a violent crime victim in the State of Ohio. The United States also seeks a declaration that Ohio's policy of denying reimbursement to the United States for the reasonable cost of medical care and services furnished to Bernath and other similarly situated claimants contravenes federal law and the United States Constitution.

On January 12, 1986, David F. Bernath was the victim of a violent crime that occurred in the State of Ohio. Bernath received treatment at a Veteran's Administration ("VA") medical center on February 12 and 13, 1986, February 26 through March 1, 1986, and March 5, 1986 for personal injuries suffered as a result of the violent crime. The total cost of the treatment provided to Bernath by the VA hospital was $1,972.00. The VA did not bill for this cost.

On January 12, 1987, Bernath filed an application with the Ohio Court of Claims seeking benefits under Ohio's Victims of Crime Act, Ohio Rev.Code Ann. §§ 2743.-51–.72 (Anderson 1981 & Supp.1989). The Ohio Attorney General conducted an investigation and recommended that Bernath receive an award of reparations in the amount of $12,179.08. This figure did not include reimbursement for medical treat-ment furnished by the VA because Bernath did not incur an economic detriment as a result of those services.

On August 4, 1987, Bernath executed a document titled "Assignment of a Right to Payment of All or Part of an Award of Reparations," which assigned to the VA his right to seek reimbursement from the State of Ohio for the $1972.00 the VA expended in providing treatment. The VA subsequently submitted a claim for reimbursement.

On February 12, 1988, the Victims of Crime Division of the Ohio Court of Claims issued an order and opinion authorizing payment to Bernath in the amount of $12,-179.08. The claim for reimbursement of the cost of treatment provided by the VA was denied, however, because the cost did not constitute an "economic loss" for Bernath.

At issue is whether Ohio's denial of the VA's request for reimbursement on grounds that the VA did not incur an "economic loss" violates 38 U.S.C. § 629 (1988).[1]

Under section 629(a)(1), the United States is entitled to recover the cost of medical care provided to a veteran for non-service-related injuries from third parties to the same extent the veteran or a private health care provider would be eligible for reimbursement of costs if the services provided had not been furnished by the VA or other federal agency or department. 38 U.S.C. § 629(a)(1). Thus, this section "requires that a recovery claim by the United States be analyzed as if the veteran had received care in a hospital other than a VA hospital—in other words, as if the veteran had been treated by a provider that charged patients for care." *United States v. New Jersey*, 831 F.2d 458, 461–62 (3d Cir.1987). Included within the group of third parties from whom the United States may demand reimbursement are states and state political subdivisions, such as municipalities. 38 U.S.C. § 629(i)(3).

The federal statute expressly authorizes the United States to recover from a state

---

**1.** Resolution of this issues does not require the Court to address any Constitutional concerns.

victims' compensation fund such as the Ohio Victims of Crime Act. *Id.* § 629(a)(2)(C). Recognizing that many states would resist reimbursing the VA for treating victims of violent crimes, Congress provided in this statute that no state or political subdivision of a state shall "operate to prevent recovery or collection by the United States under this section." *Id.* § 629(f). "Plainly Congress intended § 629 to end discrimination against federal hospitals that was taking place 'as a result of adverse court decisions and State statutes that are worded in such a fashion as to provide payment to private health care providers but exclude payment to federal health care providers.' " *United States v. Maryland,* 914 F.2d 551, 553 (4th Cir.1990) (quoting H.R.Rep. No. 79, 97th Cong., 1st Sess. 29, *reprinted in* 1981 *U.S.Code Cong. & Admin.News* 1685, 1713).

Under Ohio Crime Victims Compensation Act, Ohio compensates victims of violent crimes for costs attributable to crimes committed against them. A claimant is entitled to receive "reparations" only for "economic loss" resulting from crimes of personal violence. Ohio Rev.Code § 2743.52.

The United States argues that under the Ohio Court of Claims interpretation of the Ohio Victims of Crime Act the only real question is whether the claimant suffered economic loss due to his injuries. It contends, however, given that the federal reimbursement statute assigns the United States an independent right of recovery coextensive with that right afforded an individual claimant, the Court of Claims must also determine whether the United States sustained an economic loss. Thus, the United States argues, the Court of Claims is required to determine whether the claimant would have suffered an economic loss if he had received treatment somewhere other than at a VA facility. Ohio's refusal to make this inquiry subjects the VA to discriminatory treatment in violation of section 629.

Ohio contends that the VA is placed on an equal footing with all other providers of services to crime victims. An economic loss is only reimbursed where it is an allowable expense actually incurred by the victim. This necessary prerequisite does not impose any conditions upon the VA that are not applied to all others health care providers. Accordingly, the state argues, under section 2743.52 the VA is permitted to recover from Ohio the cost of treating a veteran injured in a violent crime to the same extent the state would reimburse the veteran if he had been treated in a private medical facility and thus section 629(a)(1) is satisfied. It is Ohio's position that so long as the VA is not subjected to discriminatory treatment, a state is permitted under section 629 to prescribe certain conditions to recovery, such as a prerequisite that the victim incur an "economic loss." Under the instant facts, since Bernath was furnished medical treatment by the VA at no cost, Bernath did not "incur" an "economic loss" compensable under section 2743.52.

The federal courts considering state statutes containing provisions similar to the provision at issue here have consistently rejected the claim that an economic loss requirement will prevent recovery by the United States. A recent Fourth Circuit Court of Appeals decision soundly rejects the argument that a state victims' compensation act that imposes an economic loss condition[2] to recovery treats public and private health care providers equally since neither of the two are compensated for providing free care. *United States v. Maryland,* 914 F.2d 551 (4th Cir.1990). In rejecting this argument, the court observed that VA hospitals provide free care approximately ninety-seven percent of the time, whereas private health care facilities rarely provide free, or reduced, medical care. The court reasoned, in light of this reality, that although the economic loss condition appears neutral on its face, its application discriminates against VA hospitals solely because, as a practical matter, they will never sustain an "economic loss" as this

2. A claimant under the Maryland statute was required to suffer a "serious financial hardship"

in order to qualify for benefits.

condition is construed under the state statute. *Id.* at 554. Private health care providers, however, generally impose a charge for service rendered and thus enable the patient to seek relief. *Id.*

The *Maryland* court concluded that Congress intended section 629 to prevent not only overt discrimination against the VA which may appear on the face of a state statute, but also state practices which have a discriminatory effect. *Id.; see* 38 U.S.C. § 629(f) ("No law of any State ... shall *operate* to prevent recovery or collection by the United States under this section....") (emphasis added). "Section 629 mandates that the ... [state] must reimburse the United States if it would have reimbursed the veteran or a private hospital had a private hospital provided the care." *Maryland,* 914 F.2d at 555 (4th Cir.1990).

The Court of Appeals for the Third Circuit considered a similar pecuniary loss requirement under a New Jersey state victims' compensation act in *United States v. New Jersey,* 831 F.2d 458 (3d Cir.1987). New Jersey presented the same argument as that advanced by Ohio: the compensation act does not discriminate, it simply preconditions recover on the claimant incurring some type of pecuniary loss. In finding the state prerequisite preempted to the extent it excluded payment to the VA, the court held "Congress mandated that the cost of the VA's treatment be viewed as the cost of a non-federal hospital, for which the veteran would have received a bill." *Id.* at 463. Stated otherwise, section 629 dictates that reimbursement claims submitted by the VA be analyzed as if the veteran had received care by a private health care provider that charged for the care. *Id.* at 461–62. "Section 629 prohibits denial of a claim, made under a state victims' compensation statute, solely because the VA provided the medical care without cost to the crime victim." *Id.* at 459.

As in *Maryland,* the *New Jersey* court rejected the state's contention that the statute did not discriminate against the VA because a private health care providers would similarly be denied benefits if they

chose to provide medical services free of charge to their patients. *Id.* at 462 & n. 2. The court recognized that acceptance of such a contention would undermine Congressional intent and ignore the economic realities of the market place. *Id.* The argument now advanced by Ohio is nothing more than a reiteration of the same argument so thoroughly rejected by the Third and Fourth Circuits.

In *United States v. California,* CV–87–0036 HLH, 1987 WL 61203 (C.D.Calif. June 3, 1987), California also argued, like Ohio, that its victims' relief act provides reimbursement only where a legal liability is incurred. Since a veteran does not incur any liability to the VA for services rendered, the condition precedent to recovery is not satisfied. In rejecting this argument, the court observed that the language and legislative history of section 629 "is intended to cause the U.S. to be treated as a medical provider to whom a legal obligation is incurred by a victim veteran." *Id.* slip op. at 2. The court further noted that "federal law requires that the state treat veterans receiving medical care by the V.A. as a person who has incurred a legal obligation for the care, and it puts the United States in the position of the veteran victim." *Id.*

This Court finds the reasoning and analysis contained in the aforementioned cases persuasive and adopts it as its own. Ohio's construction and application of its crime victims compensation program discriminates against VA hospitals in violation of section 629. Contrary to the defendant's assertions, the present scheme places VA hospitals in a position which nearly guarantees they will never be eligible for reimbursement of costs. Under section 629, a state which reimburses crime victims for medical costs incurred during treatment by private health care providers must also reimburse the VA for the value of free care rendered to such crime victims. Ohio's treatment of the VA hospitals' claims does not satisfy this requirement, and thus the Ohio statute "economic loss" requirement is preempted to the extent it is inconsistent with section 629.

WHEREUPON, upon consideration and being duly advised, the Court finds the plaintiff's motion to be meritorious, and it is, therefore, GRANTED. The Court further finds the defendant's motion to be without merit, and it is, therefore, DENIED. The Court ORDERS the parties to confer and agree on an appropriate entry for declaratory and money judgment within ten (10) days of issuance of this Opinion and Order.[3]

IT IS SO ORDERED.

---

3. The Court reminds the parties that the judgment entry should not make any reference as to the constitutionality of the state statute or the construction thereof. The Court's analysis was founded on statutory construction and interpretation and did not require resolution of the constitutionality of the state statute.