**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**BLUE CROSS/BLUE SHIELD OF
ALABAMA, Defendant–
Appellant.**

**No. 92–6521.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 8, 1993.

---

**1544**

Fournier J. Gale, III, Maynard, Cooper, Frierson & Gale, Jayna Jacobson Partain, Birmingham, AL, for defendant-appellant.

Jack Selden, U.S. Atty., Jenny L. Smith, Birmingham, AL, Mary Jo Donahue, U.S. Dept. of Justice, Civil Div., Colette J. Winston, Washington, DC, for plaintiff-appellee.

Before BLACK and CARNES, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

This is one of a number of cases across the country in which the United States seeks to recover from Blue Cross/Blue Shield medical insurance programs for the costs of medical care rendered to veterans in government hospitals. We affirm the district court's decision to grant the government's motion for summary judgment, and hold that any provision of the medigap insurance policies issued by Blue Cross/Blue Shield of Alabama (Blue Cross) that discriminates against the United States in the payment of benefits is contrary to 38 U.S.C. § 1729.

I

The material facts are not in dispute. Each veteran received medical care and treatment at VA hospitals in Alabama for non-service-connected disabilities. At the time of their medical care, each veteran was eligible for Medicare and was covered under a Blue Cross C Plus Medicare Supplemental (medigap) insurance policy[1]. Because the veterans were treated at VA hospitals, they were not required to pay for the services they received so they did not claim Medicare benefits. The VA hospitals submitted claims to Blue Cross based on the medigap policies, but these claims were denied. The United States then gave the requisite statutory notice to the named veterans of its intent to sue, and filed this suit under 38 U.S.C. § 1729.[2]

The complaint filed by the United States sought recovery from Blue Cross for the costs of medical care rendered to eight[3] veterans, asserting that the Veterans Benefits Act, 38 U.S.C. § 1729, required Blue Cross to reimburse the VA for its services as if the care were rendered at a private hospital. After oral arguments on cross-motions for summary judgment, the district court entered a declaratory judgment, holding that the medigap policies were "health-plan contracts" as defined by the statute, and that the United States was entitled to recover from Blue Cross payment for the cost of services covered by the medigap policies. *United States v. Blue Cross & Blue Shield of Alabama,* 791 F.Supp. 288 (N.D.Ala.1992). This appeal followed.

■ This court reviews the district court's order granting summary judgment de novo. *Akins v. Snow,* 922 F.2d 1558, 1560 (11th Cir. cert. denied, —— U.S. ——, 111 S.Ct. 2915, 115 L.Ed.2d 1079 (1991).

---

1. The introduction to the policies states:

 As a person enrolled under Medicare, you probably know that Medicare has provisions that require you to pay a deductible amount and some amounts of co-insurance.

 The Medicare deductible is that amount of health care charges the law requires you to pay before you begin to receive Medicare benefits.

 Co-insurance is that portion of your expenses for certain medical services that the law requires you to pay even after benefits begin. Your Blue Cross and Blue Shield Hospital and Medicare Coverage pays for the Medicare deductible and the co-insurance that you would otherwise have to pay yourself.

2. 38 U.S.C. § 1729 provides that when a veteran is furnished medical services by the United States for a non-service-connected condition, the United States can recover the cost of such service under a health-plan contract if the veteran would be eligible to recover the cost had the services not been provided by the United States.

3. There were originally nine named veterans, but because one was covered under a policy issued by the Blue Cross of a state other than Alabama, the United States no longer seeks payment for the care rendered to that veteran.

## II

Blue Cross defends its denial of the claims by asserting that

*first,* the medigap policies are not covered under 38 U.S.C. § 1729 because they are not health-plan contracts as defined by the statute;

*second,* even if the policies are health-plan contracts, the United States may recover only the amount to which the policy holder would be entitled, which is nothing because the triggering factor, payment by Medicare, is prohibited by the statute, and the terms of the policies specifically exclude payment to hospitals, such as the VA hospitals, that do not participate in the Medicare program;

*third,* the interpretation asserted by the United States would work an unconstitutional impairment of the Fifth Amendment right to contract.

38 U.S.C. § 1729 purports to place a VA hospital on the same basis as a private hospital for the purpose of recovering under third-party insurance contracts. Section 1729(a)(1) provides:

> in any case in which a veteran is furnished care or services under this chapter for a non-service-connected disability . . ., the United States has the right to recover or collect the reasonable cost of such care or services (as determined by the Secretary [of Veterans Affairs]) from a third party to the extent that the veteran (or the provider of the care or services) would be eligible to receive payment for such care or services from such third party if the care or services had not been furnished by a department or agency of the United States.

The United States may recover the costs of medical care incurred by a veteran "who is entitled to care (or payment of the expense of care) under a health-plan contract." 38 U.S.C. § 1729(a)(2)(D)(ii). A "health-plan contract" is defined as "an insurance policy or contract, medical or hospital service agreement, membership or subscription con-

tract, or similar arrangement, under which health services for individuals are provided or the expenses of such services are paid." 38 U.S.C. § 1729(i)(1)(A). The Medicare program is specifically excluded from the meaning of a health-plan contract. 38 U.S.C. § 1729(i)(1)(B).

■ These provisions allow the United States to recover the costs of care and services from a third party (other than Medicare) to the extent that the veteran or a private hospital would have received payment if the care and services had not been provided at a VA hospital. Contractual abrogation of this provision is prohibited by section 1729(f), which states that "[n]o law of any State or of any political subdivision of a State, and no provision of any contract or other agreement, shall operate to prevent recovery or collection by the United States under this section."

### A.

### *Are the medigap policies "health plan contracts"?*

■ The medigap policies clearly are "health-plan contracts" within the meaning of the statute. "A health-plan contract need do only one of two things—provide health services or reimburse the expenses of such services." *United States v. Blue Cross & Blue Shield of Maryland,* 989 F.2d 718, 727 (4th Cir.1993). The policies undoubtedly qualify as policies "under which . . . the expenses of [health] services are paid." 38 U.S.C. § 1729(i)(1)(A).

Although medigap policies are not listed as a type of policy excluded from the meaning of "health-plan contracts," Blue Cross argues that the exclusion for Medicare creates an exclusion for medigap policies as well.[4] The plain language of the exclusion refers only to Medicare. It does nothing to exclude from the definition of health-plan contracts those policies issued by private insurance companies such as Blue Cross as a supplement to Medicare benefits.

---

4. This exclusion reads:
 (B) Such term does not include—
 (i) an insurance program described in section 1811 of the Social Security Act (42 U.S.C.

1395c) or established by section 1831 of such Act (42 U.S.C. 1395j).
38 U.S.C. § 1729(i)(B).

The legislative history of 38 U.S.C. § 1729 supports this conclusion. Discussing the Medicare exclusion, House Report No. 300 states: "In the event the veteran has both Medicaid and private health insurance, the private health insurance would be payable in accordance with its terms, but no reimbursement from Medicare or Medicaid could be obtained by the VA or the private insurance company." House Rep. No. 300, 99th Cong., 1st Sess. 790 (1985), *reprinted in* 1986 U.S.C.C.A.N. 1248, 1265. The medigap policies issued by Blue Cross are health-plan contracts governed by the reimbursement and anti-discrimination provisions of § 1729. *Accord United States v. Capital Blue Cross,* 992 F.2d 1270 (3d Cir.1993).

### B.

*Is payment of medicare benefits a valid condition precedent?*

■ Blue Cross next asserts that the United States may not seek reimbursement because a condition precedent to recovery under the policy (payment by Medicare) is statutorily prevented from occurring when the care is delivered by a VA hospital. The question here is whether such a provision violates 38 U.S.C. § 1729(f), which provides that no contract "shall operate to prevent recovery or collection by the United States under this section" and which is known as the anti-discrimination provision of the statute.

■ It is true that the medigap policies do not explicitly discriminate against the United States. A contractual provision that operates to prevent recovery by the United States, however, is prohibited by the statute even where the discrimination is not apparent from the face of the policy. *See United States v. State of Ohio,* 957 F.2d 231 (6th Cir.) *cert. denied,* — U.S. ——, 113 S.Ct. 75, 121 L.Ed.2d 40 (1992); *United States v. State of Maryland,* 914 F.2d 551 (4th Cir.1990); *United States v. State of New Jersey,* 831 F.2d 458 (3d Cir.1987).

The medigap policies issued by Blue Cross clearly operate to prevent recovery by the United States. In virtually all cases, because VA hospitals may not recover expenses from Medicare, 38 U.S.C. § 1729(i)(1)(A), the policies would prevent reimbursement to the United States.[5] Alabama's private general hospitals, on the other hand, all participate in Medicare, *United States v. Blue Cross & Blue Shield of Alabama,* 791 F.Supp. 288, 289 n. 4 (N.D.Ala.1992), and therefore virtually always qualify for recovery under the medigap policies. As a practical matter, according to Blue Cross' interpretation of its medigap policies, the VA is denied recovery while private hospitals are not.

The anti-discrimination provision precludes Blue Cross from relying on the contractual exclusion from coverage for care provided at a hospital that does not participate in Medicare. The policies provide that inpatient hospitalizations, except for emergency care, are covered only if the care is received in a "participating hospital," which is defined as "one that participates in Medicare under an agreement with the Department of Health and Human Services." Since VA hospitals do not bill Medicare for the services they render to Medicare-eligible veterans, they are "non-participating hospitals," and their services are excluded from coverage under Blue Cross' medigap policies.

Blue Cross' participating hospital provision, while not discriminatory in explicit terms, clearly operates "to prevent recovery or collection by the United States" in contravention of 38 U.S.C. § 1729(f). While the operation of this medigap provision would prevent recovery by VA hospitals, which are prohibited by law from participating in Medicare, 42 U.S.C. §§ 1395f(c) & 1395n(d), it would almost always allow recovery to private hospitals because virtually all private hospitals would qualify as participating hospitals. This result constitutes discrimination against the United States in violation of 38 U.S.C. § 1729(f).

---

**5.** In all likelihood, the VA is prohibited from recovering from Medicare to avoid the unnecessary transfer of federal funds when all the money is coming out of the same coffer. *See United States v. Blue Cross & Blue Shield of Maryland,* 989 F.2d 718, 726 n. 5 (4th Cir.1993).

### C.

*Does an award to the United States violate
a fifth amendment right to contract?*

 In an argument not addressed by the trial court, if made, nor by other reported opinions in similar litigation, Blue Cross contends that the relief requested by the United States would impair its Fifth Amendment right to contract. The right to contract is not without bound, however, but is confined by existing law. The application of a regulatory statute that is otherwise valid may not be defeated by private contracts. "If the regulatory statute is otherwise within the powers of Congress, therefore, its application may not be defeated by private contractual provisions." *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 224, 106 S.Ct. 1018, 1025, 89 L.Ed.2d 166 (1986). No argument has been made that Congress did not have the power to provide that the United States could not be discriminated against in the operation of such medical insurance plans. Blue Cross cannot enter into contracts which violate existing law, then claim that the enforcement of that law infringes upon its right to contract. The district court properly rejected Blue Cross' Fifth Amendment claim.

### III

 As a result of our holding, Blue Cross must determine eligibility for medigap coverage as though the veterans had received care from a private billing hospital which participated in and received reimbursement through the Medicare program. Blue Cross must make a determination regarding coverage for those expenses Medicare would not have reimbursed. Our holding "does not mandate coverage; it merely prohibits an exclusion from recovery based on a *per se* rejection of a class of potential recipients (*i.e.*, veterans), but still permits [Blue Cross] to exercise discretion in determining eligibility on a case-by-case basis." *United States v. Blue Cross & Blue Shield of Maryland,* 989 F.2d 718, 725 (4th Cir.1993). The United States may pursue the veteran patients' claims under the medigap policies.

This decision brings Blue Cross/Blue Shield of Alabama in line with most of such programs that have dealt with this issue. We are told that the plans in 19 states and the District of Columbia all provide for reimbursement to the United States under medigap policies. *United States v. Capital Blue Cross,* 796 F.Supp. 144, 153 (M.D.Pa.1992), *aff'd,* 992 F.2d 1270 (3d Cir.1993). The plans have consistently lost in litigation involving the claims of the United States. *See United States v. Capital Blue Cross,* 992 F.2d 1270 (3d Cir.1993); *United States v. Blue Cross & Blue Shield of Maryland,* 989 F.2d 718 (4th Cir.1993).

AFFIRMED.